Filed 10/21/21  P. v. Garcia CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARTURO GARCIA,<br><br>    Defendant and Appellant. | B305691<br><br>(Los Angeles County<br>Super. Ct. No. LA032965) |

APPEAL from an order of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Arturo Garcia, who was convicted in a court trial of second degree murder, challenges the trial court's summary denial of his Penal Code section 1170.95 resentencing petition.[1]  The trial court properly determined that Garcia, who was represented by counsel, was not eligible for resentencing because the record of conviction demonstrates as a matter of law that Garcia aided and abetted a second degree murder.  We affirm.

## BACKGROUND

On September 15, 1999, the People charged Garcia and Salvador Morales with one count of murder, alleging that Garcia and Morales killed Juan Fernando Galeana with malice aforethought.  The People also alleged that a principal was armed with a firearm within the meaning of section 12022, subdivision (a)(1) and a principal personally discharged a firearm causing great bodily injury and death within the meaning of section 12022.53, subdivision (d).  The People further alleged a gang enhancement.

1. *Descriptions of Garcia's crime in appellate and habeas opinions*

In review of our opinion in defendant's direct appeal of his conviction, our Supreme Court described the facts of this case as follows:

"In a drive-by shooting, Juan Fernando Galeana, a member of the Burbank Trece street gang, was shot and killed.  Salvador Morales, a member of the Vineland Boys (related to the Sun Valley Diablos street gang), later bragged to his friend and

---

[1]  Undesignated statutory citations are to the Penal Code.

fellow gang member, Sergio Arriola, that he was the shooter and that defendant Arturo Garcia, also part of the Vineland Boys, was the driver.  Arriola told the police what Morales said, but later changed his story after he was beaten up.  Defendant [Garcia] told the same story to another fellow gang member, who informed the police.  At the time of his arrest, defendant admitted his involvement in Galeana's murder and later gave the police a full confession."  (*People v. Garcia* (2002) 28 Cal.4th 1166, 1169.)

"Following a court trial, defendant was convicted of second degree murder (§ 187, subd. (a)), *for aiding and abetting in the killing of Galeana.*  As to defendant, the trial court found true the allegations under sections 186.22 and 12022.53, subdivision (d).  Defendant's 15-year-to-life sentence was increased by 25 years to life pursuant to the section 12022.53 enhancement.  Morales, the alleged shooter, was acquitted of all charges.  The evidence against defendant showed that he was *not* the shooter."  (*People v. Garcia*, *supra*, 28 Cal.4th at p. 1170, first italics added.)

In rejecting Garcia's petition for writ of habeas corpus, the federal district court described Garcia's crime as follows:  "On April 24, 2000, following a court trial, petitioner was convicted of aiding and abetting a second degree murder [citations].  The trial court additionally found true the allegations that a principal personally discharged a firearm causing the victim's death and that the murder was gang related [citations]."  (*Garcia v. Yarborough* (C.D.Cal., Apr. 13, 2006, No. CV 03-6791-RSWL (PLA)) [2006 U.S. Dist. LEXIS 102265, at p. *1].)

## 2.    *Garcia's confession*

The trial court indicated that it had relied on Garcia's confession when it found he committed second degree murder. The court stated: "The person that probably did the shooting was acquitted, because there was no credible eyewitness identification." With respect to Garcia, the court indicated: "If he hadn't spoken, it probably would have been somewhat different."

Garcia first confessed at the time of his arrest. Garcia spontaneously said, " 'I'm fucked, you got me, my homeys and I did a drive by, my homey's in jail, he rolled over on me.' "

Garcia next confessed in a tape-recorded conversation with police officers. Garcia admitted being a Vineland gang member. Garcia said he was pumping gas when he saw "Bampy" exchanging gang signs with four rival gang members. Garcia did not identify Bampy's given name. Garcia was afraid and did not finish pumping gas.

Bampy, got into Garcia's truck and Garcia "took off," believing that the rival gang members may have had a gun. Garcia drove Bampy to pick up a gun and then they went back to the gas station "to see if those guys were over there . . . ." Garcia knew Bampy was going to pick up a gun. As Garcia looked towards the gas station, he heard four shots. Garcia saw one person fall down. Garcia stated that "Bampy was pulling the trigger." Garcia then drove away "[t]rying to get away from, from the area."

## 3.    *Garcia's trial testimony*

At trial, Garcia testified that he heard about the murder from "Cuzzy." Cuzzy told Garcia that he and "Shy Boy" "smoked" the rival gang member. Cuzzy said that the shooting occurred

4

after he and Shy Boy exchanged gang signs with a rival gang member. Garcia testified that he was in Tracy, California the night of the murder and his sister also testified that Garcia was in Tracy.

### 4. *Closing arguments*

The prosecutor argued, "[T]he evidence is clear and well beyond a reasonable doubt that this defendant was involved knowingly in the murder of the victim . . . ." The prosecutor added defendant's alibi was not credible. During his argument, the prosecutor relied heavily on Garcia's confession.

Defense counsel argued that the eyewitness identification was not reliable. Defense counsel maintained that when he was arrested, defendant did not know "what murder he was being charged with." Counsel further argued Garcia did not have a motive to kill Galeana, and only learned of the murder from Cuzzy. Counsel also referenced Garcia's testimony that he was out of town at the time of the murder.

Assuming that Garcia was the driver, defense counsel further argued that Garcia did not "know there's going to be a shooting. He doesn't even see the guy until after he hears the shots fired." Counsel questioned whether the gun was "for protection or to commit a murder."

### 5. *Conviction and sentencing*

In 2000, the trial court found Garcia guilty of second degree murder and found all enhancements true. The court sentenced Garcia to an indeterminate term of 15 years with the possibility of parole. The trial court sentenced Garcia to an additional 25-year-term for the section 12022.53, subdivision (d) enhancement.

## 6. *Direct appeal of the conviction in the Court of Appeal and Supreme Court*

Garcia appealed the judgment of conviction. In an opinion later reversed by the Supreme Court, this court reversed the section 12022.53, subdivision (d) enhancement. (*People v. Garcia* (2001) 88 Cal.App.4th 794, reversed, remanded & superseded by *People v. Garcia, supra,* 28 Cal.4th 1166.) This court held that because Morales was not convicted, the People had not proven the elements of a section 12022.53, subdivision (d) enhancement. (*Ibid.*) The Supreme Court reversed, holding that a shooter's conviction is not required to impose liability on a nonshooter under section 12022.53, subdivision (d). (*People v. Garcia, supra,* 28 Cal.4th at p. 1169.)

## 7. *Section 1170.95 petition*

On January 30, 2019 Garcia filed a section 1170.95 resentencing petition. Garcia alleged an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. He also averred that he was convicted of second degree murder pursuant to the felony murder rule or natural and probable consequences doctrine and that he could not now be convicted of murder because of changes made to sections 188 and 189. The trial court appointed counsel for Garcia.

The People argued, among other things, that Garcia was not eligible for resentencing because he was not convicted of felony murder or murder under the natural and probable consequences doctrine.

6

At a hearing, the parties disputed whether Garcia's confession demonstrated that Garcia had knowledge Morales intended to shoot anyone. Defense counsel stated: "[T]his is a very strange case where the actual shooter and killer was acquitted, and but for the comments made by my client, he too would have been at liberty."

The trial court rejected Garcia's argument, finding, "This was a case of . . . implied malice . . . . or . . . express[ ] malice with intent to kill. This is a gang confrontation. He [Garcia] knowingly . . . drives this fellow gang member to go get a gun and then back to the exact same spot where these . . . rival gang members" are located. The trial court denied Garcia's resentencing petition, finding that Garcia was ineligible under section 1170.95, subdivision (a). Garcia timely appealed.

## DISCUSSION

### A.    Background on Section 1170.95

"A person who aids and abets the commission of a crime is culpable as a principal in that crime. (§ 31.) Aiding and abetting is not a separate offense but a form of derivative liability for the underlying crime. [Citation.] Our law recognizes two forms of liability for aiders and abettors. [Citation.] First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with "knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.]" (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*).) "Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the

7

target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*Ibid*.) Under the (no-longer-valid) natural and probable consequence theory, " 'if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' [Citation.]" (*Id*. at p. 844.)

Senate Bill No. 1437 changed the law to bar a conviction for second degree murder based on the natural and probable consequences theory. (*Gentile, supra*, 10 Cal.5th at p. 846.) Under the current law, second degree murder requires the prosecution "prove the defendant acted with the accompanying mental state of mind of malice aforethought. The prosecution cannot 'impute[ ] [malice] to a person based solely on his or her participation in a [target] crime.' [Citation.]" (*Ibid*., third bracketed insertion added.)

"Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*Gentile, supra*, 10 Cal.5th at p. 848.) "[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Id*. at p. 850.)

In addition to modifying the law to bar a conviction based on the natural and probable consequences theory, Senate Bill

8

No. 1437 also established a procedure for a person convicted of felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced based on any remaining counts.[2] (*Gentile, supra,* 10 Cal.5th at p. 853.) A petition under section 1170.95, subdivision (a), must include the following:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

In evaluating a petitioner's prima facie case under section 1170.95, after the appointment of counsel, the court may consider the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Ibid.*) In reviewing any part of the record of

---

[2] Garcia does not argue that he was convicted based on the felony murder doctrine, and the record would not support such an argument.

9

conviction at this preliminary juncture, a trial court should not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.)

**B.    Section 1170.95 Does Not Apply Here Because Garcia Aided and Abetted the Second Degree Murder**

Garcia does not dispute the principle that "[a] person is not eligible for relief under section 1170.95 if he or she was convicted under a theory of direct aider and abettor liability." (*People v. Barboza* (2021) 68 Cal.App.5th 955, 961 (*Barboza*).)  Instead he argues he "had made a prima facie showing that he likely was convicted of second degree murder not as the killer or as a direct aider and abettor but under a vicarious, natural and probability theory of vicarious liability . . . ."  To the same effect, Garcia states, "The [sentencing] trial court may have believed Garcia acted without intending to kill Galeana or consciously disregarding that risk and concluded that Galeana's death was the natural and probable consequence of Garcia's intending to commit an assault but without finding that he acted with malice aforethought."  Garcia, however, does not cite to the record for these assertions.  (See Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring each brief support any reference to matter in the record by a citation].)

The record of conviction, moreover, refutes Garcia's naked argument that he was convicted based on the natural and probable consequences doctrine.  First, the trial court relied on Garcia's pretrial confession, which indicated that Garcia aided and abetted a killing, not an assault.  Garcia admitted he " 'did a drive by[;]' " drove Morales to pick up a gun; drove Morales back to the scene where a rival gang member lived; and drove Morales away after Morales shot Galeana four times.  Garcia did not

10

confess that he intended for Morales only to assault Galeana. Garcia did not testify at trial he lacked the intent to commit a second degree murder or that he did not act with malice aforethought. He just testified that he was not even at the scene of the killing, contrary to his confession. We note that defendant does not rely on this alibi defense on appeal.

No one referenced the natural and probable consequences doctrine at trial either. The prosecutor did *not* argue Garcia intended to aid and abet an assault, the natural and probable consequences of which was a murder. Defense counsel did not mention the natural and probable consequences doctrine during his closing argument. The trial court did *not* refer to the natural and probable consequences doctrine when it found Garcia guilty. In addition to the absence of any reference to the natural and probable consequence theory, there also was no reference to target and nontarget offenses.

Garcia's unsupported arguments are unpersuasive for an additional reason: Courts reviewing Garcia's conviction describe him as aiding and abetting a killing, not aiding and abetting an assault. Our high court stated, "Following a court trial, defendant was convicted of second degree murder [citation], for aiding and abetting in the killing of Galeana." (*People v. Garcia*, *supra*, 28 Cal.4th at p. 1170.) The federal district court also described Garcia as aiding and abetting a second degree murder. Garcia does not contest the federal court's description, but argues that "[t]he high court's description of Garcia's conviction could have referred to his vicarious liability under a conspiracy and/or natural and probable consequences doctrine and not necessarily to his having directly aided and abetted the killing itself." Garcia's statement conflicts with our high court's opinion which

11

expressly stated that Garcia aided and abetted the killing—not that he aided and abetted a target offense which resulted in a killing.  (*Garcia*, at p. 1170.)

In sum, the record of conviction establishes as a matter of law that Garcia was not convicted of second degree murder based on a natural and probable consequences theory, Garcia's allegation to the contrary notwithstanding.  Instead, the record supports only the conclusion that Garcia aided and abetted a murder and acted with at least knowledge that his conduct endangered the life of another with conscious disregard for life.  Because Garcia aided and abetted a murder, he is ineligible as a matter of law for resentencing under section 1170.95.  (*Barboza*, *supra*, 68 Cal.App.5th at p. 961.)  The trial court did not err in summarily denying Garcia's resentencing petition.[3]

---

[3] Garcia argues that assuming the trial court held a section 1170.95, subdivision (d) hearing, it applied the wrong standard of proof.  The trial court did not hold a section 1170.95, subdivision (d) hearing.  It summarily denied the petition because Garcia was ineligible for resentencing as a matter of law.

## DISPOSITION

The order denying the Penal Code section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED.

                                    BENDIX, Acting P. J.

We concur:


CHANEY, J.


CRANDALL, J.*

---

*  Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.